

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

ATTORNEY GENERAL

Hon. O. P. Lockhart
Chairman
Board of Insurance
Commissioners
Austin, Texas

Opinion No. O-5247
Re: Legality of expenditures of Com-
mercial Union Life Insurance Company
of Waco paid from the Mortuary Fund.

Dear Mr. Lockhart:

Your request for an opinion from this department is as
follows:

"Commercial Union Life Insurance Company of Waco,
Texas is a Statewide Mutual Assessment Life Insurance
Association, organized under the provisions of Article
4859f and operating subject to the provisions of Article
5068-1, Vernon's Revised Civil Statutes. A recent exami-
nation of the affairs of the Company revealed that cer-
tain expenditures had been made from its Mortuary Fund
for purposes which this Board considers to be unauthor-
ized and, therefore, illegal under the terms of Section
12 of said Article 5068-1.

"Opportunity has been given to the Company to present
its position on this matter, and a hearing was held on
March 23, 1943, at which evidence was taken as to the per-
tinent facts. The Company has furnished its brief which
includes a statement of facts of the authorities which
it considers to be controlling. The brief is attached
hereto and the statement of the facts contained therein
is agreed to and submitted as the basis for your decision
on the question hereinafter set out.

"The Board recognizes that the propriety of the pay-
ments from the Mortuary Fund is a question of law, and
that its duty, with respect to requiring restoration of
the monies paid out, should have proper legal determina-
tion. You opinion is, therefore, requested as to whether
expenditures for the purposes stated in the brief may
lawfully be made from the Mortuary Fund of the Company."

From the Company's brief, to which you refer, we find
that the items of expenditure challenged by your department are
as follows:

"Amount expended in settlement of two
libel suits brought by Asa H. Moore
and Guadalupe Gonzales against Commercial
Union Life Insurance Company     $ 875.15

"Attorney's fees and expenses to Richey,
Sheehy & Teeling in connection with above
libel suits              907.81

"Attorney's fees to Davenport & Ransome
in libel suits            250.00

"Attorney's fee to Arthur Klein in libel
suits               75.00

"Traveling expenses W.C. Abeel libel suits    150.00

"Traveling expenses Leslie Wynne libel suits    93.00

"Court costs, libel suits        140.27

             $2,481.23"

   From the same brief we find that these items of expense were paid in connection with two libel suits against the Company, which suits grew out of certain publicity in connection with the Company's investigation of two certain allegedly fraudulent claims paid by the Company--the one by a claimant and the other by an attorney having some connection therewith.

   It is contended by the Company that the items were properly payable out of the Mortuary Fund as a necessary incident to the required creation and maintenance of such fund under the statute.

   Senate Bill No. 135 of the 46th Legislature, Regular Session, regulating mutual assessment companies, at Section 12, provides:

   "Assessments when collected shall be divided into at least two (2) funds. One (1) of these shall be the mortuary or relief fund, by whatever name it may be called in the different associations, from which claims under certificates shall be paid, and to a limited extent the cost of defending claims, and nothing else; and the other fund shall be the expense funds from which expenses may be paid. At least sixty (60%) per cent of assessments collected, except the membership fee, must be placed in the mortuary or relief fund. The mortuary or relief funds may be invested only in such securities as are a legal investment for the reserve funds of stock life insurance companies.

"Such association shall provide in its by-laws for the portion of its assessments to be allotted to the mortuary or relief fund and may provide for the payment out of said mortuary or relief fund of attorneys' fees and necessary expenses arising out of the defense, settlement, or payment of contested claims. Any such payments out of the mortuary or relief fund for other than claims shall be subject to approval of the Board of Insurance Commissioners.

"***."

From this section it clearly appears that only one class of claims is unconditionally payable out of the mortuary fund, and that is "claims under certificates".

It is provided that "to a limited extent the cost of defending contested claims" may be paid out of such fund, and the statute in this connection adds "and nothing else". The limited extent, to which the cost of defending contested claims applies, is made clear by the subsequent language that:

"Such association *** may provide for the payment out of said mortuary or relief fund of attorneys' fees and necessary expenses arising out of the defense, settlement, or payment of contested claims. Any such payments out of the mortuary or relief fund for other than claims shall be subject to approval of the Board of Insurance Commissioners."

Now, none of the items of the contested claims herein, arose out of the defense, settlement, or payment of contested claims within the meaning of the above-quoted language. The items--each and all--arose out of independent suits--libel suits --and were not expenses arising out of contested claims. The word "claims", in this connection, obviously refers to claims under certificates.

To give the word "claim" the broad meaning contended for by the Company in its brief, would be destructive of the mortuary fund, rather than protective of that favored fund. Of course, the subject matter of a libel suit is a "claim", but it is not one involving a contested claim under a certificate, nor is it in any just sense a necessary incident to such a contested claim.

Moreover, according to the plain language of the section above quoted, the payment of attorney's fees and necessary expenses arising out of the defense, settlement or payment of contested claims, even under a certificate when made out of the mortuary or relief fund, must have the approval of the Board of

Insurance Commissioners, which it appears the Company has not had in the present instance.

The contention of the Company that the departmental construction of the statute should be followed is without merit, since Mr. Timmons, from whom the Company had the statement that the items of expense here involved were for the protection of the mortuary fund and should be paid therefrom, was not the head of any department, but at most was an employee in that department. The rule invoked by the Company has never, so far as we are aware, been applied to employees as contra-distinguished from the heads of the governmental departments. But the construction of a department proper is not conclusive--it is only persuasive--and should never be followed where it is clearly in violation of a statute.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Ocie Speer
Ocie Speer, Assistant

APPROVED MAY 6, 1943
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:       GPB, CHAIRMAN

OS-MR:wb